So our first case today is 23-1095, Pickney v. Frum. Counsel, how are you? Good, Your Honors. Thank you. Carol Vanderwood for the appellant, Officer Frum in this case. I'd like to reserve three minutes for rebuttal, if I may. Sure. This Court has already heard this case one time and remanded back to the District Court for consideration of whether what we think is the key evidence with respect to the finding of probable cause was in fact authentic. And that was an interview conducted by Officer Frum that served as the basis for his affidavit of probable cause. On remand, a hearing was held before the District Judge, and there was no dispute that the interview that serves as the sort of keystone of this appeal was in fact authentic. So that's the starting point from which we look at this case. And the simple question, the narrow question for this Court, is whether or not there was sufficient probable cause predicated on an eyewitness identification. It was really predicated on representations made in the affidavit supporting the arrest, correct? The affidavit of probable cause, Your Honor? Right. Yes. So the question is, does that affidavit of probable cause, as constructed or even reconstructed, based on that interview, support sufficient probable cause? And it is our position that it in fact does, given an eyewitness identification. Weren't there a lot of factual issues that the District Court dealt with? The District Court dealt with quite a few fact issues which we think are extraneous to the issue before the Court. Frankly, this is a case, a qualified immunity appeal from a motion to dismiss following the filing of a second amended complaint. So we're constrained to accept as true the allegations of the second amended complaint. What's unique in this particular appeal is that there are other matters that the Court was permitted to consider in the context of ruling on the motion to dismiss, and that did include the affidavit of probable cause. And most importantly for the arguments that we made in support of motion to dismiss, the interview conducted by Officer Freeland, I'm sorry, Officer Froome, to determine whether or not there was probable cause to support an arrest. Was there a disparity between the affidavit that said, used the word recognized? Well, the use of the word no, I don't think the use of the word recognized is a disparity. And if you look at the transcript of the interview, which starts in the record at 8.645, the use of the word recognized is included in the interview transcript, and it's also included in the affidavit. So no, I don't think that term is in fact a misrepresentation of what was in the interview. At 8.648 of the record, Officer Froome asked the eyewitness who voluntarily came forward, this isn't a police lineup situation, this isn't an officer tracking somebody down, an eyewitness who voluntarily came forward upon seeing a photograph of who he then identified as the assailant, and this is what the interview contains, that interaction between the officer and this eyewitness. And the officer asks, and from that picture, the picture that the witness had, which included a photograph of plaintiff in this case, Mr. Pinkney, the question, and from that picture, did you recognize anybody? So the questions during the interview are framed in the context of recognition. And then that's where the court, I think the district court took issue, because the follow-up answer was he looked an awful lot like. And the district court's opinion was that this was too tentative to satisfy probable cause. And it's our position that that's not the case when looked at in its entirety. So, for example, as the interview progressed, Officer Froome asked with respect to the facial features and some discrepancies in hairstyle, are these the same facial features? Is this the individual? And the eyewitness said yes. It's a curated line-up. He's the only African-American man in this group. There's no, excuse me, Your Honor, there's no line-up. Well, I mean photo array. There's no photo array. Right. So it's a show, it's in essence one of these one-witness show-ups of the kind that the Supreme Court has cautioned against because they're suggestive. And what the officer did not come to this witness with a photograph and say, can you confirm to me that this is our suspect? That is not at all what happened here. This is not an affirmative action by our officer to place a photograph in front of somebody of whatever racial makeup or not and say, please identify, this is the person. Can you confirm this is the person? That's not at all what happened here. This individual walked into the room with our officer with his own pictures that he brought himself that he saw, that he saw and said, that's the person I witnessed throwing the punch, and he reached out to the police to confirm that I got these pictures, that's the guy. This has not fallen to the suggestive photo array. This has not fallen to any of those other cases that the Superior, I'm sorry, but the district court itself seemed to rely on when they talked about it being an unduly suggestive identification. I think the court, the district court cited a Second Circuit case, I think Dufert, coming out 2017. And that, I mean, that's just so markedly different, and we discuss it in our brief. In that case, you have an eyewitness who says, I don't know the facial features of this individual, but this individual that you're putting in the lineup or that the police were putting in the lineup, I can recognize his clothes. I know what his clothes look like. But it's not his hair, and it's not the right height. Well, number one, the Second Amendment complaint doesn't reference the height at all, so that's largely irrelevant. And secondarily, slight discrepancies are not fatal to eyewitness identification. This circuit in the Dempsey case had various discrepancies between different eyewitness identifications, including significant differences with respect to height. Your client misrepresented the level of certainty expressed by the witness. A phrasing. Well, again, I mean, I would take issue with that characterization of it. If I were, I mean, could it have been written differently to better track the answers to the questions in the interview? And I think even if it had been, that would be sufficient under this Court's precedent to support probable cause in this particular case. Didn't the district court write that the identification procedure was defective and that the affidavit of probable cause included several material misrepresentations and omissions? Well, correct, but for example, that is an accurate representation of what the district court held. That's not a representation that we think is accurate in context. But that's actual dispute, isn't it? But, and I think this is significant as well, whether or not an officer acted reasonably. If the victim and sole witness describes the person as about six feet tall and having braids, and the actual person doesn't match that, has never matched that, and the officer leaves it out, isn't that a material omission? I don't think it is in this particular case because the braids was not dispositive. When you look at the interview, he says he had something like that, so maybe. So the hairstyle wasn't in any way determinative of what the, was not determinative of the identification in any way, shape, or form. Because the photographs were not dated, that information wasn't part of the record. What it centered on was a recognition of the facial features of the individual. But the height? The height was unknown. I mean, it's not even stated in the Second Amendment complaint. And again, this circuit has affirmed eyewitness identifications where there are discrepancies in height. That has never been deemed fatal. I mean, the key issue here is if you look at the interview in context and say, okay, let's put, let's say we reconstruct the affidavit, let's put some of this additional information in there, I think we still clearly meet the threshold for probable cause, which is just a fair probability. It's not certainty. It's just a fair probability that this individual was a perpetrator of the crime. It's not a high threshold at all. And again, when, I think going back to what the district court said, a big issue the court had was that there was some sort of suggestion in the affidavit of probable cause that there were multiple witnesses that came forward to identify this individual. And that's just, quite frankly, not an accurate representation of the affidavit of probable cause. The district court took issue with the use of the word they repeatedly in the affidavit. But it's pretty, it's very clear that the affidavit of probable cause is referencing one witness. And at one point in the second paragraph of the affidavit, it says the witness stated that they, the witness. So the district court took significant issue with the fact that there was some sort of improper suggestion of multiple witnesses identifying this individual. And that's just not an accurate or fair reading of the affidavit in context or, quite frankly, the interview itself. But a circle back, aren't these all factual disputes? And if they're all factual disputes, are we in a position to reconcile those factual disputes, or we send it back to the district court? Well, I don't think, I don't think it's appropriate to look at factual disputes in the context of a qualified immunity analysis. I think qualified immunity is a matter of law. Nobody could have construed the repeated references to they as plural, et cetera. That's not the kind of thing we do as a court of appeals. We defer to the way the district court is reading this record. You can defer to the way the district court is reading this record. I don't think you should defer to an inaccurate representation of what an objective piece of evidence says. And that is that there is no improper suggestion, as the district court held. I mean, for my review of the district court hearing transcript with Officer Froome, it really comes down to the district court thinking something more should have been done. And it's our position, and it's supported by, I think, the precedent of this court, it's not supported by any of the cases cited by the district court, that this particular identification was insufficient to support probable cause, which, again, fair probability. And when we go to the issue of credibility, we are talking about qualified immunity. It involves an official's objective legal reasonableness, not credibility. It made the way that your client did not pass along some of the caveats that more reasonably would have been expressed to the district court. So then we go to the next step. Let's look at those qualifications or whatever the issues might be. So we go to the next step, and we look at it in the context of let's reconstruct the affidavit. Let's see, let's go ahead and put into the affidavit, for example, that the officer inquired of the eyewitness, did you, is this individual in the photographs that you have identified as Kobe Pinkney, is this individual, do they have the same facial features? And if that had been put in there, I don't see how you get to a point where you say that's not probable cause when those questions are put into the context that the district court had issues with. I mean, just looking at the precedent of this court, whether this court has taken a position, and I understand it has, on eyewitness identification and whether the issues that there is with that, that doesn't take away from the fact that in the absence of some sort of independent exculpatory evidence or some specific evidence of unreliability, an officer is allowed to rely on an eyewitness identification. And another point that the district court focused on was, well, Officer Froome didn't ask this question or didn't ask that question. But again, once the threshold for probable cause is met, you don't need to go any further. And quite frankly, what we have here, we get to the end. But the officer asks, is there anything else that you can think of that might help? Anything that I haven't covered? Anything else that you have to say? And the witness says no. So based on that interview, I mean, understanding the precedent of this circuit, understanding that eyewitness identification is sufficient, understanding that this witness says this individual that I was next to when I saw the punch thrown has the exact same facial features and I'm coming to you with photographs that prompted me to come to you to tell you that this is the individual. I think that this case satisfies the minimum burden for probable cause. So is there qualified immunity when a judge comes to the conclusion that there are material misrepresentations and omissions in an affidavit of probable cause? Absolutely. If this court looks at the predicate for the district court's decisions, looks at the interview, looks at if those, let's say, qualifications have been put into the affidavit, and that would still satisfy the minimum for probable cause, then yes, you do have qualified immunity. And that's, by the way, just sort of the first issue is whether or not. No matter how bad the misrepresentations are, as long as if they had been put in correctly, there's probable cause, your position is there should be immunity. Well, that's not my position because that's not this record. This record involves what we understand to be significant omissions, and the district court did. Let's assume we disagree with you and think it's important that he overstayed the level of certainty, that he left out the discrepancies. You're saying that just because there's probable cause at the end of that, that as a matter of law, this qualified immunity prevents any further suit. I think I would take the position on this record in this case that this officer's conduct was reasonable under the totality of the circumstances, and his belief in the reliability and credibility of this witness to establish an eyewitness identification was reasonable under the circumstances, and that when you look at the discrepancies, and let's say the first step the district court did and that we were supposed to do in this type of analysis, and I'm going to go into my time so I can handle it on rebuttal or I can finish this. The first issue is to look at are there material misrepresentations. Here the district court held yes. I can go back and forth on to how material I think they are or whether they qualify as material, but certainly the interview does not track the affidavit or vice versa, but the next step you get to is now let's look at the affidavit with those clarifications. Let's put those clarifications from the interview into the affidavit, and it is our position that if you do that, you still meet the minimum threshold for probable cause, and moving beyond that, would you have to look at assuming this court agrees with the district court that there was a violation of a constitutional right, we get to the reasonableness question, and we would say on this record in these circumstances, not opening the door to the floodgates of different, but in this case in these circumstances, this officer acted reasonably and that he's entitled to qualified immunity. Thank you. Thank you. Mr. Raynor. Good afternoon, Mayor and Precinct Court. I represent the plaintiff, Coby Pinckney, and it's our contention that this court does not have proper jurisdiction, because as Raynor has indicated, the issues raised by the defendants do not involve abstract questions of law. They involve facts, facts as to whether or not there was probable cause, whether or not officer from acted reasonably. That's not for this court. That is for the lower court, and as you indicated, Judge Lancello found that there were significant omissions and false statements in the probable cause presented by officer from. The case is at the early pleading stage, the motion to dismiss stage, the stage where the facts alleged by the complaint are to be deemed true, they are to be read in a light and favorable to the plaintiff, and there has to be determination as to whether or not the facts alleged give a possibility for relief. Clearly under Twombly, our complaint meets that threshold. Defendant contends that, well, no, the question is not open-ended. It's closed. There's probable cause. The problem is that the defendant doesn't understand the difference between probable cause and reasonable suspicion. Probable cause involves a crime. Is it more likely than not that this person committed the crime? Now, certainly there was a crime committed. Red Happen was seriously injured, but there's no evidence whatsoever in this record that there was an identification of my client as the person. Duncan Freeland. Well, there is evidence that he was identified. Well, there's evidence that. There's no evidence. It's just a complaint. I mean, and he was arrested. Well, I'll take issue with identify because when he went to Duncan Freeland with the photograph, he said that he'd been shown photographs by his friend Evan Haynes and that he recognized Jarrett Shaw and my client Colby Pitney. And he said, well, Mr. Pitney looks a lot like him. And then they kept talking back and forth. And towards the end, Officer Frum says, and I'm going to quote from the record, Okay. And you said you just seen him tap right on the shoulder, looked around, you seen Colby throw the punch. Mr. Freeland didn't say anything except yeah. Why is he saying yeah to? Is he saying yeah that he saw the punch? Is he saying yeah that it's Colby Pitney? Why is he saying yeah to? Why didn't Officer Frum have any follow-up at that point? Why is this a matter of our lacking jurisdiction as opposed to just you think we should affirm? Well, because we haven't even gotten to the discovery phase yet. My client has been treated very unfairly. They come twice to the court of common pleas for the motion to dismiss phase. We haven't gone to discovery. We haven't had a chance to bring in Duncan Freeland and depose him. We haven't gone to the motions practice. And they want to treat this like some kind of summary judgment. And they want your honor to be the jury. I'm sorry, but you're not the jury. We're going to get to the jury once we get through discovery. Now, they can file a motion for summary judgment. But the notion that my client doesn't get the right to go to discovery when a federal judge in Pennsylvania says I find that there are factual omissions and misrepresentations in the civil complaint at this level, sufficient evidence to arise and the case should go forward. And then they come here and ask you to say no based on yeah. Yeah. What does yeah mean? Yeah. It's absurd. All I'm asking for is fairness for my client. This happened four years ago. My client was a promising football player at Allegheny College. He had to drop out. It was in the newspaper. Everybody saw he's the monster that beat up Red Happen. It wasn't him. It was Josiah Williams. He lost his scholarship. He dropped out of school. He lost his dream of playing college football, and he can't even get to discovery because they keep coming to the court of appeals. It's our contention that yes, your Honor, she'll affirm it. But in all fairness, why should it be here? Why should this case be here when a federal judge made certain findings following an MTD? It happens all the time. Sometimes you win. Sometimes you lose. You go to discovery. You can still win. You go to discovery. Maybe they can come in and say, oh, he definitely did or maybe he won't. But go to discovery is all I'm saying. And my kid has been treated shabbily. In the media, I feel about his process, he's been treated shabbily. He deserves the right to go forth and have his day in court instead of being dragged out for four or five years. That's my statement. Thank you very much. Thank you. I'll just be brief, Your Honors. And I understand where Mr. Pinckney's counsel is coming from. These are difficult circumstances, difficult cases. But that doesn't negate the issue that we do have a legal argument to make and to look closely at providing some guidance to officers in these situations where an eyewitness comes forward and says voluntarily with three photographs that he says have the same facial features as a person he saw punch somebody in a bar and provide some guidance. I mean, again, it's our position that that meets the minimum threshold for probable cause under, you know, the precedent of this circuit notwithstanding any issues that there might be with eyewitness identification more broadly. And I think that's guided by decisions of this court, including the Dempsey case. It is in no way informed by the cases cited by the district court to support their conclusion that it was an inherently defective identification process. It's just not analogous. We addressed that in our brief, the cases cited by the district court. So that's where we are on that. And, again, just to go back to the interview itself. And it is our position firmly that if the phrases of the questions had been placed into the affidavit of probable cause, which is how the questions were phrased, had been put into the affidavit of probable cause, it absolutely would have met the threshold for probable cause. And that that's the question you get to assuming you agree with the district court that there were material misrepresentations. It's not automatically a jury question. It's not automatically a credibility issue that forecloses a qualified immunity analysis. And, again, you know, this officer here looking at the precedent of this court, which is consistently held, eyewitness identification is sufficient. And here it's not a situation where you're walking up to an individual with six photographs where you have a known suspect and you're trying to suggest to them to give, to pick out one person. That's not the situation we're looking at here. We have a voluntary witness who is established that he's familiar with and knows the other individual in the photograph. And with respect to the hairstyle, for example, the question is asked in the interview, does he, is this the same person in the three photos? And the witness says, except for the hair, yeah. So the witness himself in that exchange acknowledged, well, the hair might be different in some of these photos, but it's the same facial features. And that's where we get to, and that's what this officer had. And the question then is, in the absence of any exculpatory evidence, in the absence of anything showing that this individual was not there, that this individual did not see what he saw, was it reasonable for this officer to believe that there was sufficient probable cause for an arrest warrant? And it's our position that there was, and that he's therefore entitled to qualified immunity. Thank you. Thank you. Thank you all, counsel, in this case. Thanks for your arguments and your briefs. We will take this matter under advisement. Have a good day.